THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(D)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Gary L. Crotts, Respondent,
 v.
 Sandra Crotts, Appellant.
 
 
 

Appeal From Greenville County
 Robert N. Jenkins, Sr., Family Court Judge
Unpublished Opinion No. 2005-UP-202
Heard February 9, 2005  Filed March 18, 2005
REVERSED AND REMANDED

 
 
 
 Kenneth C. Porter, of Greenville, for Appellant.
 Kathryn Walsh Gooch, of Simpsonville, for Respondent.
 
 
 

PER CURIAM:  Sandra Crotts (Wife) appeals a family court order granting her husband, Gary Crotts, a divorce on the ground of adultery.  Wife argues, inter alia, that the family court erred in excluding her doctors testimony.  We reverse and remand.
FACTS
Gary L. Crotts and Sandra Crotts married in 1981.  They raised one child who is now an adult.  Throughout the marriage, Husband worked in the sanitation business.  Wife was employed in the textile industry, but left the workforce in 1995 as a result of suicidal thoughts, severe depression, and bipolar disorder.  After consulting with a physician, Wife made a claim for social security disability benefits.  Beginning in 1996 and continuing until the time of marital litigation, Wifes monthly disability checks have been her sole source of personal income. 
 
Wifes mental illness took its toll on the couples marriage.  After her diagnosis, Wife was treated by physicians, took prescription medication, and was hospitalized several times.  Because of her illness, Husband took primary responsibility for household duties.  The couple eventually decided to separate, and Husband moved out of the marital residence.
 
In December 2001, Husband filed for divorce on the ground of habitual drug use.  Wife submitted an answer in which she denied the allegation of habitual drug use and filed a counterclaim seeking an order of separate support and maintenance, equitable distribution of the marital estate, attorneys fees, and alimony.  The family court issued a temporary order awarding Wife $650 per month in alimony until the cases final resolution.
 
After the temporary hearing, but before the final divorce hearing, Husband hired a private investigator to look into Wifes relationship with an alleged paramour, Winfred Crowe.  The private investigator conducted surveillance of Wife for two months.  Thereafter, Husband amended his complaint to seek divorce on the ground of adultery.
 
At trial, Husband submitted an Investigative Report by the private investigator into evidence.  The private investigator testified he saw Crowes car at Wifes home on several occasions and once saw Crowe enter Wifes home at night and leave the next morning.  Based upon these observations, he concluded Crowe was living with Wife and they were participating in an adulterous relationship.  Husbands daughter from a previous marriage testified Wife once inadvertently referred to Crowe as her boyfriend.  It was also undisputed that Wife included Crowe on her car insurance.     
 
Wife admitted that Crowe did in fact live in her house, but insisted they did not engage in a sexual relationship.  Wife asserted that Crowe, although he did not contribute to household expenses, was allowed to sleep in an extra bedroom in exchange for performing various chores and driving her around when medication prevented her from safely doing so herself.  This living situation, according to Wife, resulted in the decision to include Crowe on her car insurance.  Wife sought to corroborate this position with testimony from her psychiatrist, but the family court excluded his testimony on the ground of unfair surprise to Husband.[1]  The court did, however, allow Wife to proffer the doctors testimony regarding her medications and their possible side effects, including sexual dysfunction.
The family court awarded Husband a divorce on the ground of adultery and thus barred Wife from receiving alimony.  The court also distributed the marital estate and denied both parties request for attorneys fees.  This appeal followed.
 
STANDARD OF REVIEW
On appeal from the family court, this court has jurisdiction to find the facts in accordance with its own view of the preponderance of the evidence.  Murdock v. Murdock, 338 S.C. 322, 328, 526 S.E.2d 241, 244-45 (Ct. App. 1999).  This court, however, is not required to disregard the family courts findings; nor should we ignore the fact that the family court judge, who saw and heard the witnesses, was in a better position to evaluate their testimony.  Badeaux v. Davis, 337 S.C. 195, 202, 522 S.E.2d 835, 838 (Ct. App. 1999); Smith v. Smith, 327 S.C. 448, 453, 486 S.E.2d 516, 519 (Ct. App. 1997).  Questions regarding alimony and equitable distribution are committed to the sound discretion of the trial judge, whose decision will not be disturbed absent an abuse of discretion. Thornton v. Thornton, 328 S.C. 96, 111, 492 S.E.2d 86, 94 (1997); Rogers v. Rogers, 280 S.C. 205, 207, 311 S.E.2d 743, 744 (Ct. App. 1984).
LAW / ANALYSIS
I.  Exclusion of Witness
Wife argues the family court erred in excluding the testimony of her doctor.  We agree.
Determining the appropriate sanction for late disclosure of a witness generally lies within the discretion of the trial court.  Barnett v. Adams Brothers Logging, 355 S.C. 588, 592, 586 S.E.2d 572, 574 (2003).  This rule, however, is designed to promote decisions on the merits, and the sanction of exclusion of a witness should never be lightly invoked.  Id.  A trial judge is required to consider and evaluate the following factors before imposing the sanction of exclusion of a witness:  (1) the type of witness involved; (2) the content of the evidence emanating from the proffered witness; (3) the nature of the failure or neglect or refusal to furnish the witness name; (4) the degree of surprise to the other party, including the prior knowledge of the name of the witness; and (5) the prejudice to the opposing party.  Id. (citing Jumper v. Hawkins, 348 S.C. 142, 152, 558 S.E.2d 911, 916 (Ct. App. 2001)). 
 
In the present case, the trial court made no specific findings concerning the required considerations enumerated above.  Instead, his decision to exclude the doctors testimony was based solely on Wifes counsels statement at the prior hearing that he planned on calling Wife as his only witness.  Although Wifes counsel did make this statement at the initial hearing while the court was considering a prudent resolution to a scheduling dilemma, we do not believe it was binding on Wife.  Husband did not seek discovery in this case, nor was there a pre-trial order requiring the parties to exchange a list of witnesses; thus, Wife was under no obligation to limit her case to just her testimony.  Because no such obligation arose, Husband claims of unfair surprise and prejudice are weak, and there is no basis for finding fault in Wifes failure to name the witness.
We are further persuaded that this exclusion was erroneous when considering the type of witness excluded and the probable content of his testimony.  In order to establish a prima facie case of adultery, a party must present evidence of both the opportunity and the inclination to commit adultery.  Panhorst v. Panhorst, 301 S.C. 100, 102, 390 S.E.2d 376, 377 (Ct. App. 1990).  When attempting to prove inclination,[e]vidence placing a spouse and a third party together on several occasions, without more, does not warrant the conclusion that adultery was committed.  Hartley, 292 S.C. at 246-47, 355 S.E.2d at 871.  Wifes doctors testimony was offered to show she lacked the inclination to commit adultery and was her sole evidentiary corroboration of this assertion.  Consideration of his testimony was critical to her case, especially when considering the tenuous nature of Husbands evidence on the element of inclination.
Our review of the record indicates the family court erred in excluding Wifes doctors testimony. We therefore reverse the family courts order on that basis and remand the case for a full review of whether a statutory ground for divorce exists, adultery or otherwise.  Should the family court find grounds for divorce on remand, we also invite reconsideration of the applicable factors enumerated in section 20-3-130 of the South Carolina Code (Supp. 2004) and a possible determination of alimony. 
 
II. Equitable Apportionment of the Marital Property
Wife also seeks a revision of the equitable apportionment of the marital estate.  She argues the trial court erred when it failed to identify and value the marital property.  We agree.
Section 20-7-472 of the South Carolina Code (Supp. 2004) lists fifteen factors the court must consider in making an equitable apportionment of the marital estate, including the identity and value of the marital property.  This court will affirm the family court if it can be determined that the judge addressed these factors in a manner sufficient for us to conclude he was cognizant of them. Walker v. Walker, 295 S.C. 286, 288, 368 S.E.2d 89, 90 (Ct. App. 1988); see also Rule 26(a), SCRFC (An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the court's decision.).
Although the order states the family court gave due consideration to all the statutory factors in arriving at its decision, the family court merely granted each party the personal property currently in their possession.  We cannot glean from the record or the family courts order that the court properly addressed the statutory factors, namely the identity and value of the marital property, in determining that this distribution was equitable.  Furthermore, the statute calls for consideration of the parties marital misconduct or fault when determining the equitable distribution of the marital assets.  See S.C. Code Ann. § 20-7-472(2) (Supp. 2004).  Because we find that the exclusion of Wifes doctors testimony tainted the family courts finding of infidelity, we are further persuaded to remand the equitable distribution of the marital estate for reconsideration.[2]
For the foregoing reasons, the family courts decision is 
 
REVERSED AND REMANDED.
HEARN, C.J., GOOLSBY and WILLIAMS, JJ., concur. 

[1] The final divorce hearing was scheduled to last until 12:30 on May 30, 2003, but around noon it became clear the hearing would probably run over the allotted time as Wife had yet to begin her case.  Wifes counsel indicated that Wife would be his sole witness, but the court nevertheless decided to continue the case until June 20.  On that date, Wifes counsel sought to submit the testimony of both Wife and her doctor.  Husband objected based on Wifes counsels prior statement that he would only be presenting Wifes testimony. The court agreed.
[2]  We leave the issue of attorneys fees to the family courts discretion upon reconsideration of the issues addressed herein.